UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| JANE DOE, et al., | No. C 11-04759 CW (LB) |
| Plaintiffs, | **ORDER REGARDING THE PARTIES' FEBRUARY 23, 2012 STIPULATION** |
| v. | |
| RYAN GILL, et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Jane Doe, Judy Brown, Imaree Cross, and Ericka Whitmeyer (collectively, "Plaintiffs"[1]) brought claims under 42 U.S.C. § 1983, alleging that San Leandro Police Officers Ryan Gill and Anthony Morgan used excessive force on Gwendolyn Killings during an incident that took place in Oakland, California on December 29, 2010. *See* First Amended Complaint ("FAC") (Doe), ECF No. 12; Complaint (Brown and Cross), ECF No. 1, No. C11-05009 (Oct. 11, 2011);

---

[1] Ms. Doe brought this lawsuit in her capacity as Gwendolyn Killings's heir and as personal representative of Ms. Killings's estate. First Amended Complaint (Doe), ECF No. 12 at 2, ¶ 2. After Ms. Doe filed her lawsuit, Ms. Brown, Ms. Cross, and Ms. Whitmeyer, who also are representatives of Ms. Killings's estate, brought lawsuits of their own which featured identical allegations and claims. *See Brown v. Gill*, No. C11-05009 CW (N.D. Cal. Oct. 11, 2011); *Whitmeyer v. Gill*, No. C11-05083 CW (N.D. Cal. Oct. 17, 2011). Judge Spero, who previously presided over Ms. Doe's case, related the two newer cases to Ms. Doe's case. Related Case Order, ECF No. 20. Upon reassignment, Judge Wilken consolidated all three cases and made Ms. Doe's case the lead one. *See* Minute Order, ECF No. 35; ECF Entry on January 20, 2012.

Complaint (Whitmeyer), ECF No. 1, No. C11-05083.[2] Plaintiffs also brought a claim against the City of San Leandro (the "City") under *Monell v. City of New York Department of Social Services*, 436 U.S. 658 (1978), for failing to take necessary, proper, or adequate measures to prevent its officers' alleged violations. FAC (Doe), ECF No. 12 at 6-8, ¶¶ 34-43.[3]

Currently before the court is the parties' stipulation regarding the production of portions of Officer Gill's and Officer Morgan's personnel files. Stipulation, ECF No. 41. Defendants delivered files for the officers for *in camera* review, but the court notes that they contained no documents because apparently there have been no complaints of excessive force or "misconduct" – the types of complaints at issue here – against Officer Gill or Officer Morgan. Nevertheless, the court will set forth the proper legal standard and analysis in the event such discovery is found in the future. Thus, upon review of the stipulation and documents submitted, consideration of the parties' arguments and the applicable legal authority, and the arguments of counsel at the March 27, 2012 telephonic hearing, the court ORDERS Defendants to produce the requested discovery – to the extent any exists – to Plaintiffs, subject to a protective order, as described below.

## II. BACKGROUND

On December 29, 2010, Ms. Killings was operating a vehicle near Bancroft Avenue in Berkeley, California when she collided with a parked vehicle. FAC (Doe), ECF No. 12 at 3, ¶¶ 12-13. Plaintiffs allege that this collision may have been caused by Officer Gill and Officer Morgan. *Id*., ¶ 13. After the collision, Officer Gill and/or Officer Morgan fired eight to nine rounds into Ms. Killings's vehicle. *Id*., ¶¶ 14-16. Ms. Killings was killed. *Id*., ¶ 16.

Plaintiffs then brought § 1983 claims, alleging that Officer Gill's and Officer Morgan's actions constituted excessive force against Ms. Killings, in violation of Ms. Killings's constitutional rights. FAC (Doe), ECF No. 12. She alleges that, in order to later justify the amount of force used, Officer

---

[2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

[3] Because the allegations in Ms. Brown and Ms. Cross's and Ms. Whitmeyer's complaints are identical to those in Ms. Doe's First Amended Complaint, the court will only cite to Ms. Doe's First Amended Complaint in this order.

C 11-04759CW (LB)
2

Gill and Officer Morgan provided misleading, deceptive, and/or false facts regarding the incident. *Id*. at 4, ¶ 19. In addition to the § 1983 claims against the two officers, Plaintiffs brought a *Monell* claim against the City for failing to take necessary, proper, or adequate measures to prevent its officers' alleged violations. *Id*. at 6-8, ¶¶ 34-43. Plaintiffs also brought state law claims for wrongful death and survival. *Id*. at 9-10, ¶¶ 44-59.

On February 23, 2012, the parties filed a joint stipulation regarding the City's refusal to comply with Plaintiffs' request for production of certain documents from Officer Gill's and Officer Morgan's personnel files. Stipulation, ECF No. 41. Specifically, Plaintiffs seek documents that relate to any complaints of excessive force or "misconduct" – which Plaintiffs defined to include the "fabrication of evidence, theft of property by police officers, falsification of official documents, prejudice and/or discrimination" – from the past ten years. *Id.* at 2 n.1.[4] Judge Wilken ordered Defendants to deliver any such documents from the officers' personnel files to this court for an *in camera* inspection and judicial determination of which, if any of them, should be disclosed. Referral Order, ECF No. 45.

### III. LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in

---

[4] So far, Plaintiffs apparently have only served requests for productions of documents related to "misconduct" and have not served requests for documents related to excessive force. Nevertheless, documents related to excessive force have been explicitly included within the ambit of the parties' stipulation. *See* Stipulation, ECF No. 41 at 2; Referral Order, ECF No. 45 at 1.

controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

## IV. DISCUSSION

Defendants first argue that Plaintiffs' request is overbroad. Stipulation, ECF No. 41 at 4. They say that this case "is essentially one of excessive force," so they should not need to produce documents related to the fabrication of evidence, theft of property by police officers, falsification of official documents, prejudice, or discrimination. *Id*. While it is true that Plaintiffs' claims appear to be based only on the officers' alleged excessive force, *see* FAC (Doe) at 4-10, ¶¶ 20-59, they do allege that, to later justify the amount of force used, Officer Gill and Officer Morgan provided misleading, deceptive, and/or false facts regarding the incident, *id*. at 4, ¶ 19. In light of this allegation, and Defendants' affirmative defenses that Officer Gill and Officer Morgan acted lawfully, *see* Answer, ECF No. 33 at 9-12, the court finds that the substance of Plaintiffs' document requests are not overbroad. However, the court does find the time periods covered by Plaintiffs document requests to be overbroad. Plaintiffs seek documents going back ten years from December 29, 2010, but they offer no justification for such a length of time. Instead, the court finds it reasonable to limit Plaintiffs' document requests to documents going back five years from December 29, 2010, or from December 29, 2005.

Defendants next argue that the requested documents are protected by state and federal privileges and that production of them would violate Officer Gill's and Officer Morgan's privacy rights. The California Penal Code requires law enforcement agencies to investigate complaints against officers and retain these confidential records as part of the officers' personnel records. *See* Cal. Pen. Code § 832.5, 832.7. California Penal Code § 832.7(a) provides that "[p]eace officer personnel records . . . are confidential and shall not be disclosed by the department or agency that employs the peace officer in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." California Evidence Code § 1043, in turn, requires prior judicial or administrative authorization for discovery or disclosure of police officer personnel records.

"Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in

the light of reason and experience.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting Federal Rule of Evidence 501); *see Heathman v. United States District Court*, 503 F.2d 1032, 1034 (9th Cir. 1974) ("[I]n federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege.").[5] Accordingly, the Defendants' California law-based privilege argument is inapposite. *See*, *e.g.*, *Herring v. Clark*, No. 1:05–cv–00079–LJO–SMS–PC, 2011 WL 2433672, at *5 (E.D. Cal. June 14, 2011); *see also Jackson v. County of Sacramento*, 175 F.R.D. 653, 655 (E.D. Cal., Sep. 11, 1997) (California Penal Code § 832.7 "creates no litigation privilege" in federal court).

Federal common law, though, recognizes a qualified privilege for official information. *Kerr v. U.S. Dist. Ct. for the Northern Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975).[6] "In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990), *cert den.*, 502 U.S. 957 (1991); *Hampton v. City of San Diego*, 147 F.R.D. 227, 230-31 (S.D. Cal. 1993); *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Kelly v. City of San Jose,* 114 F.R.D. 653, 660 (N.D. Cal. 1987)). "In the context of civil rights suits against police departments, this balancing approach should be 'moderately pre-weighted in favor of disclosure.'" *Id.* (quoting *Kelly*, 114 F.R.D. at 661).

Here, Defendants state that the City maintains its officers' personnel files in confidence. Stipulation, ECF No. 41 at 5. "This confidentiality," it contends, "is essential to provide for public safety in that anonymity is a requirement of full disclosure for most witnesses to investigations of

---

[5] Federal law applies to privilege based discovery disputes involving federal claims, even if allied with by pendent state law claims. *See*, *e.g.*, *Pagano v. Oroville Hospital*, 145 F.R.D. 683, 687 (E.D. Cal. 1993); *Martinez v. City of Stockton*, 132 F.R.D. 677, 681–83 (E.D. Cal. 1990).

[6] As one court has noted, "[t]his federal 'qualified' governmental privilege is consistent with California statutes according a qualified privilege to peace officer personnel records." *Doyle v. Gonzales*, No. S-11-0066 GEB GGH, 2011 WL 3925045, at *4 (E.D. Cal. Sep. 7, 2011) (citing Cal. Pen. Code § 832.7).

police misconduct. *Id*. Without this confidentiality, "witnesses would not come forward and provide the information necessary for a full and complete investigation of citizens' complaints," a consequence that would "undermine the police procedures for investigating complaints and thereby render the internal investigation process useless." *Id*. Defendants' "chilling effect" argument, though, has been considered and rejected by numerous courts – including the one that decided *Kelly*, a case upon which Defendants rely. *See Soto*, 162 F.R.D. at 613-14("'[A] general assertion that a police department's internal investigatory system would be harmed by disclosure of the documents is insufficient'" to meet the threshold test for invoking the official information privilege.") (citing *Chism v. County of San Bernardino*, 159 F.R.D. 531, 534-35 (C.D. Cal. 1994); *Kelly*, 114 F.R.D. at 672 ("[D]efendants cannot meet their burden simply by asserting, without empirical support, that officers will refuse to cooperate with Internal Affairs investigations if their statements are subject to even limited disclosure."); *see also Watson v. Albin*, No. C-06-07767 RMW (HRL), 2008 WL 1925257 (N.D. Cal. Apr. 30, 2008) ("[Defendant's] arguments that disclosure would discourage exhaustive internal investigations are unpersuasive. Courts in this district have previously rejected such claims, and there is no reason to depart from that reasoning here.") (citing *Kelly*, 114 F.R.D. at 672; *Soto*, 162 F.R.D. at 613-14); *Mai Thi Vu v. Clark*, No. C05-02605 RMW (HRL), 2006 WL 3318096, at *2 ("There is no support for an argument that disclosure would lead to a breakdown of the IA investigation system and in the past, courts have struck down such reasoning.") (citing *Kelly*, 114 F.R.D. at 672; *Soto*, 162 F.R.D. at 613-14). This court finds those cases reasoning persuasive and sees fit to reject Defendants' "chilling effect" argument here as well.

Federal courts also recognize a right of privacy respecting confidential law enforcement records. *Kelly*, 114 F.R.D. at 660-61; *Soto*, 162 F.R.D. at 616. Such claims are closely scrutinized when the documents at issue are related to the officers' work with the police department. *Soto*, 162 F.R.D. at 616 (suggesting that internal investigation files are not protected by right of privacy when documents "related simply to the officers' work as police officers") (citing *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 435 (10th Cir. 1981)). If an individual's privacy is at stake, courts balance "the need for the information sought against the privacy right asserted." *Soto*, 162 F.R.D. at 616.

Current case law suggests the privacy interests police officers have in their records do not outweigh a plaintiff's interests in civil rights cases. *See Soto*, 162 F.R.D. at 617; *Hampton*, 147 F.R.D. at 230; *Miller*, 141 F.R.D. at 301. In addition, officers' privacy concerns may be sufficiently protected with the use of a "tightly drawn" protective order which specifies that only the plaintiff, his or her counsel, and his or her experts may have access to the material, and that copies of such material will be returned to the defendants at the conclusion of the case. *See Kelly*, 114 F.R.D. at 662, 666, 671; *Hampton*, 147 F.R.D. at 231; *Miller*, 141 F.R.D. at 301. The court sees no reason to depart from this reasoning. Here, the documents requested are related to Plaintiffs' claims and Defendants' defenses, and the parties could enter into a protective order to minimize privacy concerns.

## V. CONCLUSION

Based on the foregoing, the court ORDERS the parties to meet-and-confer and to submit a stipulated protective order to govern discovery in this case.[7] Once the protective order is submitted and approved by this court, Defendants SHALL produce to Plaintiffs any documents from Officer Gill's and Officer Morgan's personnel files that relate to any complaints of excessive force or "misconduct" – defined to include the "fabrication of evidence, theft of property by police officers, falsification of official documents, prejudice and/or discrimination" – from December 29, 2005 to present.

This disposes of ECF No. 41.

**IT IS SO ORDERED.**

Dated: March 27, 2012

LAUREL BEELER
United States Magistrate Judge

---

[7] The court recognizes that Defendants submitted a proposed protective order with the documents submitted for *in camera* review, but the court prefers that the parties work together to draft and submit a proposed protective order that is to all of their likings.